# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacqueline Elizabeth Frazier, | Civil No. 14-3843 (SRN/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Norman Kenneth Bickford and Webster School District, | |
| Defendants. | |

Robert Bennett, Esq., Kathryn Bennett, Esq., and Andrew J. Noel, Esq., Gaskins, Bennett, Birrell, Schupp, LLP, counsel for Plaintiff.

Emile H. Banks, Jr., Esq., and Thomas J. Donnelly, Esq., Emile Banks & Associates, LLC; and Thomas A. Harder, Esq., Foley & Mansfield PLLP, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

In late May 2014, the Plaintiff, Jacqueline Elizabeth Frazier ("Frazier") suffered serious injuries when a school bus driven by Defendant Norman Kenneth Bickford ("Bickford") struck her and pinned her beneath its wheels. Defendant Webster School District ("the School District"), which is located in Wisconsin, owned the bus and employed Bickford as a bus driver. Acting in that role on the day of the accident, Bickford drove the bus from Wisconsin into Minneapolis. Frazier commenced this lawsuit seeking compensatory damages

from Bickford for negligently operating the school bus and from the School District on a theory of respondeat superior.

The parties have brought motions for partial summary judgment that present choice-of-law issues regarding the applicability of statutory limits on municipal tort liability. In her motion (Doc. No. 28), Frazier contends that: (1) Minnesota's law governing statutory limits on municipal tort liability applies; (2) the School District waived that municipal liability cap by purchasing insurance with a policy limit greater than Minnesota's municipal liability limit; and (3) the School District's insurance policy's full $5,000,000 limit is available for recovery. In their cross-motion (Doc. No. 33), the defendants seek a declaration that: (1) Wisconsin's law governing statutory limits on municipal tort liability applies; (2) the School District did not waive that municipal liability cap by purchasing insurance; and (3) Wisconsin law limits the damages recoverable by Frazier to $250,000. Alternatively, if Minnesota's law governing statutory limits on municipal liability applies, the defendants seek a declaration that: (1) the School District did not waive Minnesota's municipal liability cap because its insurance policy includes an express non-waiver provision; and, as a result, (2) Minnesota law limits the damages recoverable by Frazier to $500,000. The District Court referred these motions for proposed findings of fact and conclusions of law. 28 U.S.C. § 636; D. Minn. LR 72.1. Based on the parties' motions and supporting documents, the arguments of counsel at the Court's August 18, 2015 hearing, and on the entire record, this Court recommends that Frazier's motion for partial

summary judgment be denied and that the defendants' cross-motion be denied in part and granted in part.

**FACTS**

## I. The Accident

The following facts are undisputed.[1]  Frazier is a Minnesota resident. (Doc. No. 1, Compl. ¶ 1.)  Bickford is a citizen of Wisconsin.  (*Id.* ¶ 2.)   The School District is a public school district operated under the laws of Wisconsin. (*Id.* ¶ 3; *See* Doc. No. 36, Aff. of James E. Erickson ("Erickson Aff.") ¶¶ 1–4.) The District employed Bickford as a bus driver.  (Compl. ¶ 13; Doc. No. 5, Ans. ¶ 1 (admitting allegations in paragraph 13 of the Complaint).)  On May 29, 2014, in the course of that employment, Bickford was operating a school bus owned by the School District.  (*See* Ans. ¶ 9 (admitting that doctrine of respondeat superior applies).)

That day Bickford was driving the school bus from Wisconsin into Minneapolis for a field trip to Target Field.  (*See* Doc. No. 31, Aff. of Robert Bennett ("Bennett Aff.") ¶ 3, Ex. 1, Accident Reports 12 ("Bickford stated that he had dropped off a group of school kids at the Minnesota Twins baseball game. . . .").  After he had dropped students off at Target Field, he was trying to find a parking lot.  (Doc. No. 41, Suppl. Aff. of Robert Bennett ("Suppl. Bennett

---

[1]     The parties do not argue in their cross-motions whether summary judgment is appropriate on the underlying questions regarding liability.  This Court makes no proposed findings of fact or conclusions of law on such issues.

Aff.") ¶ 4, Ex. 8, Tr. of July 1, 2015 Dep. of Norman Bickford ("Bickford Dep.")

4:7–9.)  He did not find the lot he was looking for, and while navigating through

Downtown Minneapolis, he eventually attempted to make a left turn onto

westbound Interstate 394 from Second Avenue North, believing it would take him

back to Target Field.  (Accident Reports 12; Bickford Dep. 4:12–24.)  When

Bickford was turning left through the intersection, Frazier was crossing the street.

(Accident Reports 13.)  Bickford did not see Frazier.  (Bickford Dep. 4:1–6;

Accident Reports 14.)  As he was driving the bus through the intersection,

Bickford collided with Frazier.  (Accident Reports 10–14.)  As a result of the

collision, Frazier sustained serious injuries, including a severed femoral artery

and vein, a large degloving wound to her left leg, a broken femur and tibial

fracture, and other injuries.  (*See* Bennett Aff. ¶ 5, Ex. 2; Doc. No. 41-1, Pl.'s

Mem. in Supp. of Mot. for Partial Summ. J. on Defs.' Waiver of Municipal Tort

Cap ("Pl.'s Mem.") 1.)

## II.   This Lawsuit

Following the accident, Frazier commenced this suit, seeking damages

against both Bickford for his alleged negligence, and against his employer, the

School District, based on the theory of respondeat superior.  (Compl. at ¶¶ 94–

100.)  In this litigation, and particularly relevant to the pending motions for partial

summary judgment, two issues could significantly affect Frazier's potential

recovery of damages.  The first issue concerns statutory limits on the amounts a

municipality, such as the School District, may be required to pay in a judgment.

4

And the second issue depends on the School District's purchase of an insurance policy, with liability limits that exceed those statutory limits, and the legal effect of both procuring that insurance and specific language within the policy.

### A. Relevant Statutory Limits On Municipal Liability

As for the relevant statutory limits, both Minnesota's and Wisconsin's legislatures have enacted laws that impose a cap on the recovery a tort victim may obtain in a lawsuit against a municipality. In Minnesota, subject to a number of exceptions, "every municipality is subject to liability for its torts," Minn. Stat. § 466.02, but a municipality's "liability . . . shall not exceed . . . $500,000 to any claimant . . . for claims arising on or after July 1, 2009," *id.* § 466.04. Wisconsin law imposes a similar, but lower, $250,000[2] statutory limit on municipal liability for accidents involving motor vehicles. Wis. Stat. § 345.05(3) (establishing that "the amount recoverable by any person for any damages . . . in any action shall not exceed $250,000"). Thus, both states place limits on the damages municipalities may be required to pay, and depending on the law applicable to this dispute, Frazier's potential recovery could be affected.

---

[2] Wisconsin has a more general statute establishing a $50,000 municipal liability cap, Wis. Stat. § 893.80(3), but "[t]he limitations under s. 893.80(3) are applicable to a claim under [the municipal motor vehicle accident statute], except that the amount recoverable by any person for any damages, injuries or death in any action shall not exceed $250,000." Wis. Stat. § 345.05(3).

## B. The School District's Insurance Policy

As for the insurance aspect of this litigation, there is no dispute that the School District purchased an insurance policy from Community Insurance Corporation. (Doc. No. 37; Bennett Aff. ¶ 5, Ex. 3 ("Community Policy").) The Community Policy provides public entity liability insurance with a $5,000,000 limit of coverage per occurrence for incidents involving bodily injury. (Community Policy at 1.) That policy limit is well above the municipal liability cap under either Minnesota or Wisconsin law, but Frazier ultimately seeks to recover damages up to the full amount of the Community Policy.

By procuring insurance in excess of the statutory limit on municipal liability, under Minnesota law, a municipality waives the limitation on its liability established by the legislature. *See* Minn. Stat. § 466.06.[3] Under Wisconsin law, when a city buys a policy with such excess coverage, it does not waive the statutory limits on municipal liability in the same way, Wis. Stat. § 893.80(9),[4] and for a waiver to occur, there must be specific language in the insurance policy

---

[3] Pursuant to Minn. Stat. § 466.06, "any municipality may procure insurance against liability of the municipality," and "[t]he insurance may provide protection in excess of the limit of liability imposed by section 466.04[, which establishes the statutory damages cap discussed above.] . . . The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim." *Id.*

[4] Wisconsin Statutes § 893.80(9) provides that "[t]he procurement or maintenance of insurance by a [municipality] shall not . . . [c]onstitute a waiver of the provisions" limiting recovery against a municipality for a tort.

expressly waiving governmental liability limits, *Gonzalez v. City of Franklin*, 403 N.W.2d 747, 755–77 (Wis. 1987). The Community Policy purchased by the School District includes a provision that purports to prevent a waiver of a statutory limit on liability. It states:

> Nothing contained in this policy shall be deemed a waiver of any statutory immunity or limitation of liability available to any *insured*. *We* do not waive our right to deny liability by reason of such immunity or limitation.

(Community Policy at 34 (italics in original to signal defined policy terms).) Should the Court determine that Minnesota law applies, the parties dispute the legal effect of this language.[5]

Based on the facts and the legal framework in which this dispute arises, the parties' cross-motions essentially present the following issues for the Court's resolution. First, does Minnesota or Wisconsin statutory limit on municipal liability apply in this action? And second, if Minnesota law applies, by procuring the Community Policy, has the School District waived the municipal cap on liability so that Frazier may potentially recover up to the Community Policy limits?

---

[5] The parties do not appear to dispute that if Wisconsin law applies, the policy contains no language that would effectively waive Wisconsin's statutory limit on municipal liability pursuant to the rule in *Gonzalez*, 403 N.W.2d 747, 755–77.

## DISCUSSION

### I.    Summary Judgment Standard

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed, *Celotex Corp.*, 477 U.S. at 323, and the record is to be viewed in the light most favorable to the nonmoving party, *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir. 1992).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

## II.    Analysis

### A.    Choice of Law

Both parties' motions for summary judgment present the issue whether Minnesota's or Wisconsin's statutory limit on municipal liability applies in this case.  Because this is a diversity case, Minnesota's choice-of-law rules govern which state's law limiting municipal tort liability applies.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (explaining that in a case over which a federal court has diversity jurisdiction, the court applies the choice of law principles of the forum state); *Highwoods Props., Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005) (same).  Before turning to the full choice-of-law analysis, Minnesota law requires the Court to first consider whether an actual conflict exists between the laws that may arguably be applied and whether each state's law may be applied constitutionally in this lawsuit.

#### 1.    Actual Conflict

Before engaging in a full choice-of-law analysis the court must first determine if a conflict exists.  *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007); *see also Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994) (stating that courts are first required to consider "whether the choice of one state's law over another creates an actual conflict").   If a conflict does exist and it is outcome determinative, the Court must then analyze and apply Minnesota's choice-of-law rules to determine which state's law should apply.  *See Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 997 (D. Minn.

9

2004) (stating that a conflict exists if the rule of a particular state is outcome determinative); *see also Christian v. Birch*, 763 N.W.2d 50, 55 (Minn. Ct. App. 2009) (same).

The parties agree that there is an actual conflict between Minnesota's statutory cap on municipal liability and the statutory limits on municipal liability imposed under Wisconsin law. This Court agrees. There is a plain conflict between Minnesota's and Wisconsin's statutory limits on municipal liability that is outcome determinative. If Minnesota's statutory limit on municipal liability applies to the accident involved in this litigation, Frazier's recovery of damages will be limited to $500,000. If, on the other hand, Wisconsin's statutory cap on municipal tort liability applies, Frazier's recovery of damages will be limited to $250,000. Because Frazier stands to recover a greater sum under Minnesota law than she would under Wisconsin law if she prevails on her negligence and vicarious liability claims, the outcome of this case will be different, and an actual conflict exists for choice-of-law purposes.

There is also a lurking potential for another conflict between Minnesota's and Wisconsin's laws that warrants some discussion. As described above, *see* discussion, *supra* at 5–6, Minnesota and Wisconsin treat waiver of the statutory limits on municipal liability differently. For such a waiver to occur, Wisconsin requires express language in the policy indicating intent to waive the municipal liability cap. *Gonzalez*, 403 N.W.2d at 755–77 (absent such affirmative language, there is no waiver). Minnesota's waiver statute provides that procuring

insurance in excess of the statutory cap constitutes a waiver and includes no requirement for policy language indicating intent to waive those limits.  Minn. Stat. § 466.06 ("The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim.").  However, the Minnesota waiver statute also says nothing about waiver where a policy includes language stating that the policy is not intended to waive any statutory limitation on liability.  Here, the policy does include a non-waiver provision and, as discussed below, this operates to keep the Minnesota cap of $500,000 in place despite the purchase of the Community Policy.  Thus, the different way in which Minnesota and Wisconsin treat the waiver of statutory limitations of municipal liability does not affect the outcome of this case.

## 2. Either State's Law May Be Constitutionally Applied

Before considering Minnesota's choice-of-law factors, the court must also consider whether the law of each state may be constitutionally applied.  *Glover*, 345 F. Supp. 2d at 997 (citing *Jepson*, 513 N.W.2d at 469).  "For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of law is neither arbitrary nor fundamentally unfair."  *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 590 N.W.2d 670, 672 (Minn. Ct. App. 1999).

Again, the parties do not dispute that either Wisconsin or Minnesota's statutory limit on municipal liability may be constitutionally applied in this action. Both Minnesota and Wisconsin have significant contacts with this dispute so that application of either state's law governing limits on municipal liability may be applied constitutionally. Frazier is a Minnesota resident and the accident that caused her injuries occurred in Minnesota. This action is also proceeding in a federal court in Minnesota. Minnesota has a strong connection to this dispute. Both of the defendants in this case are Wisconsin residents, the School District owned the school bus involved in the accident, which was licensed in Wisconsin, and Bickford was acting in the course of his employment by the School District as a bus driver when the accident occurred. Wisconsin, therefore, also has a significant connection to these proceedings. Under these circumstances, it would be neither arbitrary nor fundamentally unfair to apply either state's law. *See Lommen v. City of East Grand Forks*, 522 N.W.2d. 148, 150 (Minn. Ct. App. 1994) (concluding that either North Dakota's or Minnesota's law could be applied constitutionally in a case involving a Minnesota defendant who crossed state lines into North Dakota in a police vehicle causing an accident that injured a North Dakota resident). Because it would be constitutionally permissible to apply either Wisconsin's or Minnesota's law, the Court must next consider Minnesota's relevant choice-of-law factors.

### 3. Choice-of-Law Analysis

In determining whether to apply Minnesota law or the law of another state, Minnesota courts consider five factors: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 412 (1973); *see also Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn. 1994) ("These factors were not intended to spawn the evolution of set mechanical rules but instead to prompt courts to carefully and critically consider each new fact situation and explain in a straight-forward manner their choice of law."). In applying these factors, "'rather than . . . seek[ing] superficial factual analogies between cases,'" *Lommen v. City of East Grand Forks*, 522 N.W.2d 148, 150 (Minn. Ct. App. 1994) (quoting *Jepson*, 513 N.W.2d at 470), the Court must "identify and evaluate the meaningful contacts with respect to the actual issue (the rules in conflict)." *Id.*

### a. Predictability of Results

The first factor "addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action." *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003) (emphasis omitted). "Tort actions generally do not implicate party expectations because torts stem from unplanned accidents." *Lommen v. City of E. Grand Forks*, 522 N.W.2d 148, 150 (Minn. Ct. App. 1994). Although the importance of party

expectations in tort actions may be diminished, Minnesota law does not "*per se* preclude[] the application of any of the five [choice-influencing] factors in tort cases." *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995).

The defendants contend that their expectations justify applying Wisconsin law in this case. Bickford and the School District argue that they both have a substantial expectation that they may invoke protections for municipalities found in the relevant Wisconsin statutes capping the liability of governmental entities. (Doc. No. 35, Defs.' Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Defs.' SJ Mem.") 11.)

The defendants rely on the Minnesota Court of Appeals' discussion of this factor in *Lommen* to support this argument. 522 N.W.2d at 150. There, a Minnesota police officer pursued a suspect across state lines into North Dakota and caused an accident injuring a North Dakota resident during the chase. The court considered such an officer's expectation that he would enjoy a certain level of tort immunity in performing his job, and reasoned that depriving the officer of that immunity under the circumstances by applying North Dakota law "would compromise the efficacy of interstate pursuits." *Id.* The court went on to explain that it would apply Minnesota law, which granted a greater immunity to the officer than he would be entitled to under North Dakota law, because it would be a poor policy choice to restrict an officer's willingness to pursue suspects across state lines by "subject[ing] the officer to differing standards of immunity based on the fortuitous fact of where someone is injured." *Id.*

14

The defendants' comparison of this case to the circumstances in *Lommen* is unpersuasive. It is unnecessary to provide a municipality with the maximum level of protection from tort liability to ensure that cities and their employees will continue to cross state lines for the purposes of recreation or commerce. On the other hand, were an officer and her employer to lose immunity from liability for accidents that occur after crossing state lines, a police force may be more likely to adjust its policies to prohibit such interstate pursuit. The potential for accidents when an officer is in pursuit of a fleeing suspect is simply greater than is the potential for a motor vehicle accident when a school district sends its students on a field trip to a nearby metropolitan area in a sister state. Thus, the desire not to discourage law enforcement's interstate pursuit of a criminal suspect that was implicated in consideration of this factor in *Lommen* has limited applicability here.

The defendants also argue that Wisconsin law should be applied because the School District and its insurer would not expect their right to rely on damages caps to be frustrated because the School District's bus was involved in an accident in Minnesota. (Defs.' SJ Mem. 11–12.) The defendants rely on *Jepson*, 513 N.W.2d 467, to support this argument, contending that in *Jepson*, Minnesota's interest in compensating tort victims yielded to the policy of ensuring that contracting parties receive the benefit of the agreements they enter. (Defs.' SJ Mem. 12.)

In *Jepson*, a Minnesota resident bought an insurance policy from a North Dakota insurer to cover seven vehicles, six of which were licensed and registered in North Dakota, and one in Indiana.  The insured bought the policy through a Minnesota insurance agent.  The insured was later injured in Arizona while he was riding as a passenger in a real estate agent's car.  513 N.W.2d at 468–69. The insured received some compensation for his injuries from the real estate agent's insurer, the insurer of the other motorist involved in the accident, and from his own insurer's no-fault coverage, but he sought additional compensation by stacking the underinsured motorist benefits applicable to all seven vehicles covered by his policy.  *Id.* at 469.  North Dakota law would prohibit such stacking, but Minnesota's law would allow it, potentially increasing the available insurance funds to compensate the insured for his injuries.  *Id.*  In discussing the first choice-of-law factor, the Minnesota Supreme Court addressed the reasonable expectations that the insured and his insurer would receive from the legal system based on "the benefit of their bargain." *Id.* at 470.  The court reasoned that "[t]o the extent the choice of law in this case contributes to giving [the insured plaintiff and the insurer defendant] the benefit of their bargain, it enhances the predictability of the parties' contractual arrangements."  *Id.*  Applying North Dakota's law prohibiting stacking of underinsured motorist benefits rather than Minnesota's law would enhance that predictability because the plaintiff and the defendant insurer negotiated the premiums for the policy based on North Dakota rates, the policy covered vehicles that were predominately licensed and

registered in North Dakota, and the policy was issued to named insureds at a North Dakota address. *Id.* at 471. Given these facts, and the fact that the accident at issue occurred in Arizona, there was no reason to expect that Minnesota law would apply. Notably, the court observed that "[p]erhaps the parties might have predicted that, had Jepson been injured in one of the vehicles in Minnesota, Minnesota law might be applied." *Id.*

Here it would be reasonable for the School District and its insurer to expect that Minnesota law would apply for an accident that occurred in Minnesota even though they negotiated their contract in Wisconsin to provide coverage for a municipality located in Wisconsin. The School District is located near the Wisconsin-Minnesota border, and Minneapolis, the city to which the bus traveled in this case, is one of the largest nearby metropolitan areas. It is likely that some of School District's activities involve taking students across the Minnesota border and into Minneapolis to take advantage of the resources and learning opportunities in the larger city. Indeed, the Director of Transportation for Webster School District testified in this case that during the 2013–14 school year, the School District traveled to Minnesota approximately 20 times for various events. (*See* Suppl. Bennett Aff. ¶ 5, Ex. 9, July 1, 2015 Dep. of Brian Q. Sears ("Sears Dep.") 17:8–16.) The School District and its insurer could have predicted that Minnesota law would apply under these circumstances. *See Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 833 (Minn. 1979) (applying Minnesota law to insurance case, in part, because insurer could have predicted that insured would

drive to visit his former home in Minnesota).  And unlike the North Dakota insurer issuing a policy to cover vehicles licensed and registered in North Dakota in *Jepson*, here the School District did in fact venture into Minnesota to provide recreational or educational opportunities for its students.  Minnesota's connection with the School District and its insurer is, therefore, not nearly as attenuated as was Minnesota's relationship to the contractual agreement at issue in *Jepson*.

Further, to the extent that a municipality has a justified expectation that it will retain the benefit of a cap on tort liability should an accident occur after it has crossed over the border into a sister state, that expectation is not eliminated by applying Minnesota law in this case.  Minnesota law imposes a cap on municipal liability in tort cases such as this.  The conclusion that the School District's reasonable expectation that it would receive the benefit of its bargain with its insurer to take advantage of such a limit on tort liability is reinforced by the language of the policy, which states that "[n]othing contained in this policy shall be deemed a waiver of *any* statutory . . . limitation of liability available to any insured."  (Community Policy at 34 (emphasis added).)  The reference to "*any* statutory . . . limitation on liability" indicates that the parties to this insurance agreement did not expect that the only statutory cap that might be applied was Wisconsin's.  Had that been their expectation and intent, the contract could have said so.

For the foregoing reasons, the predictability factor weighs in favor of applying Minnesota's statutory limit on municipal liability rather than Wisconsin's.

### b.     Maintenance of Interstate Order

The second factor—maintenance of interstate order—is primarily concerned with whether application of Minnesota law to a plaintiff's claim would manifest disrespect for the sovereignty of the state whose laws would otherwise apply.  *See Jepson*, 513 N.W.2d at 471.  Applying this factor "courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong."  *Id.* (citing Robert A. Leflar, *Choice-Influencing Considerations in Conflicts Law*, 41 N.Y.U. L. Rev. 267, 285–87 (1966)).  Courts should avoid applying the law of a given state where doing so would reward a party's obvious forum shopping.  *See id.*

The defendants argue that applying Minnesota law in this case would show "manifest disrespect for Wisconsin's sovereignty, as well as potentially impeding interstate movement of people."  (Defs.' SJ Mem. 12.)  They also contend that Minnesota's interest in compensating its own residents who are tort victims is reduced by its own statutory limits on municipal liability so that Wisconsin's interest in limiting a tort plaintiff's recovery against Wisconsin municipalities to $250,000 should not be set aside merely because the School District's bus crossed state lines.  (*Id.* at 12–13.)  They assert that the Court should consider Wisconsin's interest in protecting its citizens, whose tax dollars fund the operation of their school districts,  and apply Wisconsin's statutory damages cap to avoid burdening those taxpayers from "additional exposure simply because the accident occurred 30 miles across the Minnesota border."  (*Id.* at 13.)

Here we have a Minnesota resident who was crossing a Minnesota street and was injured by a school bus that collided with her in an intersection. Wisconsin, of course, has a connection to this litigation in that the school bus involved in the accident was owned by a Wisconsin municipality, was licensed and registered in Wisconsin, was operated by a Wisconsin driver, and was insured by a Wisconsin insurance company. But the Wisconsin-based School District somewhat regularly sent its students by bus into Minnesota to take advantage of recreational and educational opportunities within Minnesota's borders. Given the location of the accident and the School District's choice to avail itself of the benefits Minnesota's nearby cities had to offer, Minnesota's interests are strong enough that applying Minnesota law would not show disrespect for Wisconsin's sovereignty. Stated differently, Minnesota's interest in compensating its residents who are injured by Wisconsin drivers that enter the state is "sufficiently apparent" that Wisconsin "would not be offended by application of Minnesota law." *See Lommen*, 522 N.W.2d at 151.

Further, contrary to the defendants' argument, it seems unlikely that the School District would deprive its students of these somewhat regular educational or recreational opportunities in nearby metropolitan areas in Minnesota merely because the School District's activities would be subject to a higher cap on tort liability on the off chance that another accident could occur in Minnesota in the future. *See Jepson*, 513 N.W.2d at 471 (indicating that courts should consider

whether application of Minnesota law would impede the interstate movement of people).

Finally, there is no suggestion that applying Minnesota law under the circumstances of this case would encourage forum shopping. There is no evidence here that Frazier is seeking to have Minnesota law applied merely because it promises greater recovery. Frazier is a Minnesota resident, who was injured in Minnesota. This entire lawsuit arises out of events that occurred here, not across state lines. This is not a scenario where a party's advocacy for application of Minnesota law is essentially a stretch. Minnesota's connection to the issue in dispute—the limitations on a tort victim's right to compensation from a municipal tortfeasor—is sufficiently strong here that any concerns of encouraging forum shopping by applying Minnesota's municipal liability cap are minimal, if not non-existent.

Because applying Minnesota's statutory limits on municipal liability in this case would neither be an affront to Wisconsin's sovereignty, nor impede the interstate movement of people, nor encourage forum shopping, this factor weighs in favor of applying Minnesota law.

### c. Simplification of the Judicial Task

"The third factor, simplification of the judicial task, has not been given much weight" by the Minnesota Supreme Court. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 95 (Minn. 2000). In applying the third factor, the relevant question is not whether applying the law of one state would

be simpler than applying the laws of another state. *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005). Instead, the question is whether, with respect to any particular claimant, applying the law of Minnesota would be simpler than applying another state's law that would otherwise apply. *Id.* This Court is just as capable of applying Wisconsin's law limiting the tort liability of municipalities as it is of applying Minnesota's municipal tort caps. The third factor is therefore neutral in this case, and does not affect this Court's conclusions regarding which state's law should apply.

### d. Advancement of the Forum's Interest

Under the fourth factor, the Court must weigh the policy interests of Minnesota with those of the other state's law sought to be applied. *Mooney*, 244 F.R.D. at 536–37 (citing *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739–40 (8th Cir. 1995)). A forum state's law reflects the forum state's interests—or it would not be the law of the forum. Therefore this consideration would always favor the choice of forum law unless, as a Minnesota court has declared, we consider 'the relative policy interests of the two states.'" *Nesladek*, 46 F.3d at 739 (quoting *Lommen*, 522 N.W.2d at 152).

The defendants argue that the statutory limits on municipal liability implicate the relationship between a Wisconsin municipality and Wisconsin taxpayers, and they assert that this relationship is the most relevant relationship at issue here. (Defs.' SJ Mem. 14–15.) Because this relationship is seated in

Wisconsin, defendants contend, applying Minnesota law would "infringe on Wisconsin's power to limit the liability of its public employees." (*Id.* at 15.)

In considering the weight to be given to this factor, there are several relevant policy considerations. Both Minnesota's and Wisconsin's legislatures have seen fit to impose limitations on municipal tort liability. These legislative choices reflect a mutual interest in protecting each state's public funds (and each state's taxpayers) from being overburdened by judgments in individual cases. Yet neither state leaves the injured plaintiff unable to recover altogether where municipal tortfeasors are concerned. Minnesota allows a greater recovery than Wisconsin permits. This reflects, perhaps, that Minnesota has struck a different balance between its policy interest in protecting the public fisc and its competing interest in ensuring that tort victims receive compensation for their injuries. Wisconsin has engaged in that same act of balancing competing policy interests.

How the Court should weigh these relevant policy interests of sister states in deciding which state's law to apply is not entirely clear under Minnesota's choice of law rules. In *Boatwright v. Budak*, 625 N.W.2d 483 (Minn. Ct. App. 2001), the Minnesota Court of Appeals concluded that Minnesota's interest in compensating tort victims outweighed its interest in limiting liability, but there the interest in limiting liability did not implicate the public treasury; rather the Minnesota law at issue limited vicarious liability of rental car owners. *Id.* at 488–90 (concluding that applying Iowa law, which would impose unlimited vicarious liability, would best serve Minnesota's interest in compensating tort victims

despite Minnesota statute limiting recovery from rental car owner at $100,000).

In another case where taxpayer funds were not implicated, the Eighth Circuit

concluded that Minnesota's interest in ensuring tort victims receive compensation

yielded to Nebraska's and Minnesota's shared interests in limiting liability and

repose. *Nesladek*, 46 F.3d at 739–40 (applying Nebraska law that would bar a

plaintiff's product liability claims against an automobile manufacturer where both

Minnesota's useful life statute and Nebraska's statute of repose advanced the

shared governmental interest of limiting liability for injuries caused by older

products and applying Minnesota law would encourage forum shopping).

In *Lommen*, a case which involved weighing Minnesota's interest in

providing compensation to those injured by municipal officials with its interest in

limiting governmental liability, the Minnesota Court of Appeals considered this

fourth factor "decisive." 522 N.W.2d at 152. It reasoned that Minnesota's

interest in compensating tort victims was "necessarily limited by Minnesota's

immunity doctrine, which, in order to facilitate unhindered operation of

government, usually denies compensation to those injured by municipal officials."

*Id.* The court declined to apply North Dakota law, which may not have provided

the Minnesota police officer immunity in light of differing immunity standards, *see*

*id.* at 149 n.1 & 152, because doing so would "infringe on Minnesota's power to

define the tort immunity it gives within the public employee/employer

relationship." *Id.*

*Lommen* provides some support for the defendants' position in this case that Wisconsin law should be applied. Here, as in *Lommen*, the relationship between public employees, their municipal employers, and taxpayers implicates one state's sovereignty in a direct manner. *See id.* at 152. That state is Wisconsin. But unlike the immunity doctrine at issue in *Lommen*, which prohibits liability altogether, Wisconsin's legislature has not made that State's municipalities entirely immune from liability in cases where municipal employees cause accidents through negligent operation of a motor vehicle. As noted above, by virtue of merely limiting liability for municipal tortfeasors, Wisconsin has struck a balance between its interest in compensating tort victims and its countervailing interest in protecting public funds. Minnesota strikes that balance differently, so that a tort victim's ceiling on recovery is higher under Minnesota's municipal liability cap than it would be under Wisconsin law, but the two state's policies are close enough so that application of the forum state's cap would not constitute manifest disrespect for the foreign state's law. Thus, although *Lommen* can be read to counsel deference to Wisconsin's power to define the limits on recovery its legislature has set, the circumstances of this case suggest that Minnesota's law can be applied without disrespecting Wisconsin's policy choices.

Based on the foregoing, this factor weighs slightly in favor of applying Minnesota's statutory cap on municipal liability.

### e. The Better Rule of Law

The fifth factor is not considered unless the other factors do not resolve the choice-of-law issue, *see Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455–56 (Minn. Ct. App. 2001)—which, as a practical matter, means that the fifth factor is almost never considered, *see Nodak Mut. Ins. Co.*, 604 N.W.2d at 96 ("Regarding the fifth factor, application of the better rule of law, we note that this court has not placed any emphasis on this factor in nearly 20 years. . . ."). Here, there is no basis to conclude that either Wisconsin's or Minnesota's municipal liability cap is a "better" rule of law; they are "just different." *See Jepson*, 513 N.W.2d at 473. As a result, this Court gives this factor no weight in its choice-of-law analysis.

### f. Conclusion

As in any case presenting choice-of-law issues, the Court's primary task here is weighing intertwined and sometimes competing policy considerations while respecting sovereign governments' independent spheres of power. This case presents, on the one hand, Minnesota strong policy favoring compensation of tort victims, which is tempered by Minnesota's equally important interest in protecting municipalities and ultimately taxpayer money from large judgments. At the same time, a Wisconsin municipality's potential liability and Wisconsin taxpayer funds are put in play in this lawsuit, and Wisconsin has a strong policy interest in limiting recovery in such cases, which is reflected in Wisconsin's statutory cap on municipal liability for motor vehicle accidents. Wisconsin's

legislature has decided to set the municipal liability cap in such a case at $250,000, reflecting perhaps a greater emphasis on preserving public funds than is reflected in Minnesota's higher limit on municipal liability.  And Wisconsin's lower damages cap may reflect a choice that its interest in compensating tort victims is weaker than is its desire to maintain the availability of government funds for purposes other than compensating tort victims.  But the state interests in this case are essentially parallel.  By applying Minnesota's municipal damages cap under these circumstances, the Court does not ignore Wisconsin's important policy interests.  The Court can respect Wisconsin's policy interests by applying Minnesota's municipal damages cap and simultaneously honor Minnesota's policy favoring compensation for tort victims.  For these reasons, Minnesota's statutory limit on municipal tort liability should be applied in this action.

### e.    Comity

The defendants also contend that the Court should apply Wisconsin law based on the doctrine of comity.  (Defs.' SJ Mem. 16–22.)  Under Minnesota law "[j]udicial comity is the respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions. . . . Comity is not a formal rule, but rather an informal policy of deference."  *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 449 (Minn. Ct. App. 2001).  For the same reasons that this Court recommends applying Minnesota law under its choice-of-law analysis above, it concludes that the doctrine of comity does not require application of Wisconsin's statutory limit

on municipal liability out of respect for Wisconsin's sovereignty under the circumstances of this case.

**B.    Waiver of the Statutory Limits on Municipal Liability**

Because Minnesota's statutory limit on municipal liability should apply in this case, the Court must next consider whether the School District waived that municipal damages cap by purchasing the Community Policy.[6]  The defendants argue that the School District did not waive any limit on liability by purchasing the $5,000,0000 Community Policy because that policy includes an anti-waiver provision.  (Defs.' SJ Mem. 29–32.)  Frazier argues that, as a matter of law, merely by purchasing a $5,000,000 insurance policy, which exceeds Minnesota's municipal liability cap, the School District waived its limitation on liability regardless of any non-waiver language found in the policy.[7]  (Doc. No. 41-1, Pl.'s

---

[6]    In support of their motion for summary judgment, the defendants argued that although it is a Wisconsin-based public entity, the School District is a "municipality" to which the municipal damages cap in section 466.04 applies. (Defs.' SJ Mem. 27.)  Frazier has not disputed that the School District satisfies the statutory definition of "municipality" under Minn. Stat. § 466.01.  (*See* Doc. No. 40, Pl.'s Mem. in Resp. to Defs.' Mot. for Partial Summ. J. ("Pl.'s Resp."), *passim*.)  This Court, therefore, assumes that Frazier concedes this point. *Cf. Satcher v. Univ. of Ark. at Pine Bluff Bd. of Tr.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

[7]    Frazier also appears to argue that the defendants essentially admitted they waived the statutory limits on municipal liability in Minn. Stat. § 466.04 by stating, in the joint Rule 26(f) Report that preceded the Court's Rule 16 conference, that "Defendants are insured by Community Insurance Corporation with an applicable limit of $5,000,000.00 per occurrence."  (Doc. No. 9, Rule 26(f) Report; Pl.'s

(Footnote Continued on Following Page)

Mem. in Supp. of Mot. for Partial Summ. J. on Defs.' Waiver of Municipal Tort

Cap ("Pl.'s Mem.") 6–10; Pl.'s Resp. 6–8.)  Again, the Community Policy contains

the following non-waiver provision:

> Nothing contained in this policy shall be deemed a waiver of any
> statutory immunity or limitation of liability available to any *insured.*
> *We* do not waive our right to deny liability by reason of such
> immunity or limitation.

(Community Policy at 34 (italics in original).)

To support her position, Frazier points to Minnesota cases stating that a

municipality's procurement of insurance in excess of the municipal damages cap

waives a limitation on liability to the extent of the insurance policy's limits.  *See*

*Schoening v. United States Aviation Underwriters, Inc.*, 120 N.W.2d 859, 866

(Minn. 1963); *Casper v. City of Stacy*, 473 N.W.2d 902, 905 (Minn. Ct. App.

1991) (concluding that a municipality may "waive its section 466.04 liability limits

---

(Footnote Continued from Previous Page)

Mem. 3 ("In fact, defendants' initial counsel stipulated in the parties' Rule 26(f) Report and before this Court that: 'Defendants are insured by Community Insurance Corporation with an applicable limit of $5,000,000.00 per occurrence.'"); Bennett Aff. ¶ 10 (asserting that defendants' counsel "confirmed" that "$5,000,000.00 was all the insurance available in this case").  Frazier has failed to show that she is entitled to judgment as a matter of law on this basis. Nothing in the record indicates that the defendants intended to stipulate that, under Minnesota law, they waived the statutory limitation on municipal liability. And Frazier provides no support for the proposition that a statement like the one the defendants' initial counsel made in the Rule 26(f) Report, or his comments at the Rule 16 conference, can sufficiently establish, for purposes of summary judgment, that there is no genuine dispute of material fact and that a movant is entitled to judgment as a matter of law.

by purchasing insurance in excess of those limits as authorized by section 466.06.").  And Frazier relies on the language of Minn. Stat. § 466.06, which states that "[t]he procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim."  *Id.* However, Minn. Stat. § 466.06 is silent on the effect of language in such a policy stating that the parties do not intend to waive a statutory limitation of liability, which the Community Policy at issue indisputably includes.  And none of the cases Frazier cites analyze, or indeed even mention, the effect of a non-waiver provision similar to the one in the Community Policy.  Therefore, neither the language of the statute nor the cases Frazier cites supports a conclusion that she is entitled to partial judgment as a matter of law on the waiver issue.

The parties' briefing points to only one case discussing the effect of a non-waiver provision in an insurance policy procured by a municipality that provides coverage in excess of the statutory limitation on liability in Minn. Stat. § 466.04. *Reimer v. City of Crookston*, No. 00-cv-370 (ADM/RLE), 2003 WL 22703218 (D. Minn. Nov. 13, 2003), involved, among other issues, cross-motions concerning waiver of Minnesota's municipal damages cap where the defendants, a city and a school district, procured self-insurance policies with limits that exceeded the applicable cap.  *Id.* at *2 (describing the policies, their limits, and their non-waiver language).  One of the plaintiffs (the other was his spouse) had been seriously injured while inspecting the boiler room at a pool that the city and

the school district jointly operated. *Id.* at *1. The plaintiffs sought damages in excess of the then applicable $300,000 cap on municipal liability. *Id.* They argued that the defendants had waived those statutory liability limitations through their respective procurement of insurance coverage up to $1,000,000. *Id.* at *3 (describing the plaintiffs' argument based on Minn. Stat. § 466.06). The district court concluded that neither defendant had waived the statutory limits on municipal liability because they purchased their policies through self-insurance pools, and a Minnesota law applicable to such self-insured municipalities required express provisions in an "ordinance or resolution extending the coverage" for a waiver to occur. *Id.* Further, the court explained:

> Not only are the policies devoid of any explicit waiver of the limits of Minn. Stat. § 466.04, subd. 1, but the inclusion of unambiguous non-waiver language is dispositive of the issue of liability limits even if Defendants were not considered self-insured. The City's policy directly states several times that the City of Crookston was not electing to waive the statutory limits of its financial liability to tort claimants.

*Id.* at *4.

Frazier attempts to distinguish *Reimer*, arguing that its discussion of the effect of non-waiver language in such an insurance policy was unpersuasive dicta. Frazier points to the Minnesota Supreme Court's analysis in *Schoening v. United States Aviation Underwriters, Inc.*, 120 N.W.2d 859, 866 (Minn. 1963), of a municipality's purchase of coverage in excess of the damages cap in section 466.04. There the court described the rationale of finding a waiver

occurs where a municipality purchases a policy including such excess coverage as follows:

> We are clearly of the view that where a municipality expends public funds for the purchase of liability insurance, such expenditure constitutes a waiver by the municipality and its insurer to the extent of the policy coverage.  Were we to hold otherwise, the funds so expended would be mere gifts to the insurance carriers.  In accepting the premium payments the insurer thereby accepts the risk growing out of the municipality's ownership and operation of municipal facilities. The real effect of this rule is not to deprive the municipality of any right inherent in, and essential to, its governmental functions, but is only to make an insurance carrier liable for the losses which it has contracted to cover in its policy.

*Id.* at 128–29.  But *Schoening* did not address the effect of non-waiver language, and *Reimer* makes sense of the issue discussed in the excerpt from *Schoening* above.  *Reimer* explains that a municipality may obtain liability coverage in excess of the municipal damages cap and agree not to waive that limitation on liability without giving a gift to the insurer because the caps do not apply to every conceivable claim the municipality may face.  2003 WL 22703218, at *4 n.1 ("Municipalities are motivated to obtain coverage in amounts greater than the statutory liability limit to protect themselves from federal claims, to which the state law damage limitations do not apply.").  For example, a municipality, and its individual employees, may be sued for damages pursuant to 42 U.S.C. § 1983 for intentional violations of a person's constitutional rights, and in such a federal question case, a state law limiting municipal liability would be inapplicable.  *See Hester v. Redwood County*, 885 F. Supp. 2d 934, 950 (D. Minn. 2012) (explaining that in *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978),

the Supreme Court subjected municipalities to liability for "constitutional torts" under § 1983, but "Minn. Stat., ch. 466 affects liability only for Minnesota state law torts").

In addition, nothing in section 466.06 prohibits an insurer and a municipality from agreeing to a non-waiver provision in an insurance policy, as the School District and its insurer agreed to include in the Community Policy at issue in this case. In fact, section 466.06 is silent on the question whether an insurer and municipality can reach such an agreement and leave the statutory limit on municipal liability intact where the policy limits exceed such statutory limits. Absent some specific legislative prohibition on the freedom of insurers and municipalities to enter contracts, there is no reason to nullify the School District's agreement with its insurer.

Because there is no conflict between the statute and the policy provision at issue, Frazier's reliance on *Atwater Creamery Co. v. Wester Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn. 1985), is misplaced. (*See* Pl.'s Resp. 8 (citing *Atwater Creamery* for the proposition that "when an insurance policy provision conflicts with a statute, the policy must be amended to conform to the statute").) In *Atwater Creamery*, the parties disputed whether the statutory definition of burglary should be substituted for a narrower policy provision defining burglary. *Id.* at 275. The Minnesota Court of Appeals held "that an insurance policy provision must be in direct conflict with a statute before a conformity clause operates to substitute the statutory provisions for the policy provision." *Id.* at 275.

33

Because there was no actual conflict between the statute and the policy provision, the parties were free to define the scope of "the risk the insurer is willing to underwrite," and the conformity clause did not require substitution of the statutory definition of burglary. *See id.* The court also noted that "[a]n insurer may limit the risks against which it is willing to indemnify the insured." *Id.* This same principle—giving the insurer and the insured the freedom to contract for limiting risks against which the insurer will indemnify the insured—supports the conclusion in *Reimer* and the one reached by this Court here.

Based on the foregoing, this Court concludes that the School District's Community Policy includes unambiguous non-waiver language that "is dispositive of the issue of liability limits" in this action. *Reimer*, 2003 WL 22703218, at *4. For this reason the amount of the Community Policy in excess of $500,000 does not cover Frazier's claim, rendering the waiver clause of Minn. Stat. § 466.06 inapplicable in this case.

## RECOMMENDATION

Based on the discussion above, this Court **HEREBY RECOMMENDS** that:

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 28) be **DENIED**; and

2. The Defendants' Motion for Partial Summary Judgment (Doc. No. 33) be **DENIED IN PART** to the extent it seeks a declaration that Wisconsin law limits the damages recoverable by Plaintiff to $250,000, and be **GRANTED**

**IN PART** to the extent it seeks a declaration that Minnesota law limits the damages recoverable by Plaintiff to $500,000.

Date: August 25, 2015

 s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.