## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Jacqueline Elizabeth Frazier,<br><br>               Plaintiff,<br><br>v.<br><br>Norman Kenneth Bickford and Webster School District,<br><br>               Defendants. | Case No. 14-cv-3843 (SRN/JJK)<br><br><br>**ORDER ON REPORT AND RECOMMENDATION** |

Robert Bennett, Esq., Kathryn Bennett, Esq., and Andrew J. Noel, Esq., Gaskins, Bennett, Birrell, Schupp, LLP, counsel for Plaintiff.

Emile H. Banks, Jr., Esq., and Thomas J. Donnelly, Esq., Emile Banks & Associates, LLC; and Thomas A. Harder, Esq., Foley & Mansfield PLLP, counsel for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R & R") of Magistrate Judge Jeffrey J. Keyes dated August 25, 2015 [Doc. No. 50]. In the R & R, Magistrate Judge Keyes recommends denying Plaintiff Jacqueline Elizabeth Frazier's ("Frazier") Motion for Partial Summary Judgment [Doc. No. 28] and denying in part and granting in part Defendant Norman Bickford's ("Bickford") and Webster School District's ("WSD") (collectively, "Defendants") Motion for Partial Summary Judgment [Doc. No. 33]. Frazier filed timely objections to the R & R ("Pl.'s Obj.") [Doc. No. 51] to which Defendants responded ("Defs' Resp.") [Doc. No. 53]. Defendants also filed timely objections to the R & R ("Defs' Obj.") [Doc. No. 52] to which Frazier responded

1

("Pl.'s Resp.") [Doc. No. 54].

The Court must conduct a *de novo* review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that *de novo* review, the Court adopts the R & R's recommendation that Minnesota law applies, but respectfully declines to adopt its recommendation that under Minnesota law the damages recoverable by Frazier are limited to $500,000.   Frazier's Motion for Partial Summary Judgment is therefore granted.  Defendants' Motion for Partial Summary Judgment is denied.

## I.   BACKGROUND

The factual and procedural background of this matter is well documented in the R & R and is incorporated herein by reference.  (See R & R at 3-7.)  None of the parties object to the R & R's recitation of the facts.  (See Pl.'s Obj. at 1; Defs' Obj. at 2.)

### A.  Factual Background

In May 2014, Frazier, a Minnesota resident, was struck by a school bus in Minnesota.[1]  (R & R at 3.)  That school bus was owned by WSD, a Wisconsin school district near the Minnesota border, and operated by Bickford, a citizen of Wisconsin, who was employed by WSD as a bus driver.  (Id.)  Bickford was operating the school bus in the course of his employment, taking school children on a field trip to Target Field in Minneapolis when he struck Frazier.  (Id. at 3-4.)  As a result of the collision, Frazier

---

[1] Neither party argued that summary judgment on the underlying questions of liability in the matter was appropriate.  (See R & R at 3 n.1.)  Thus, like the Magistrate Judge, this Court makes no proposed findings of fact or conclusions of law on the issue of liability. (See id.)

sustained serious injuries.  (Id. at 4.)

Prior to this incident, WSD purchased an insurance policy ("the CIC Policy") from a private insurer, Community Insurance Corporation ("CIC").[2]  (Id. at 6; see Ex. 3 to the Affidavit of Robert Bennett ("CIC Policy") [Doc. No. 31-2].[3])  The CIC Policy provides WSD with public entity liability insurance up to $5,000,000 per occurrence for incidents involving bodily injury.  (CIC Policy at 2.)  Within a section of that policy called "Conditions" there is a provision entitled "Governmental Immunity" which reads:

> Nothing contained in this policy shall be deemed a waiver of any statutory immunity or limitation of liability available to any *insured*.  *We* do not waive our right to deny liability by reason of such immunity or limitation.

("the Non-Waiver Provision") (Id. at 34.)

### B.  Procedural Background

Frazier brought a tort claim seeking damages from the Defendants.  (R & R at 4.) Two issues relevant to the parties' motions for partial summary judgment affect the amount Frazier might recover: (1) the statutory limits (or caps) on the amounts a municipality, such as WSD,[4] may be required to pay; and, (2) whether WSD's purchase of the CIC Policy waived any applicable statutory cap.  (Id. at 4-5.)  These issues in turn depend on whether Minnesota or Wisconsin law applies.

---

[2] The record is devoid of any evidence indicating CIC is not a private insurer.  No party argues CIC is not a private insurer.

[3] The CIC Policy contains several documents, all of which are paginated separately.  (See generally CIC Policy.)  For the sake of clarity, the Court will cite to the ECF page numbers when referencing the CIC Policy, as did the R & R.  (See R & R at 7.)

[4] Frazier does not challenge WSD's status as a "municipality" under any relevant statutory definition of that term.  (See R & R at 28 n.6; see generally Pl.'s Obj.)

In Minnesota "every municipality is subject to liability for its torts," Minn. Stat. § 466.02, but that liability is capped at $500,000 for claims arising after July 1, 2009, Minn. Stat. § 466.04.  Wisconsin imposes a lower statutory cap of $250,000 on municipal liability for accidents involving motor vehicles.  Wis. Stat. § 345.05(3).

The potential effect of a municipality purchasing liability insurance in excess of any statutory cap also differs between Wisconsin and Minnesota.  (See R & R at 6-7.)  In Minnesota, "[t]he procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim."  Minn. Stat. § 466.06.  In Wisconsin, procurement of insurance in excess of the statutory cap does **not** waive those limitations.  Wis. Stat. § 893.80(9)(a).  To waive the statutory limit, the policy must explicitly state the municipality's intent to do so.  Gonzalez v. City of Franklin, 403 N.W.2d 747, 755-57 (Wis. 1987).[5]

Based on the above, Frazier moved for partial summary judgment, specifically requesting a finding that Minnesota law applied and that Defendants waived the $500,000 statutory cap by procuring the CIC Policy (meaning Frazier could recover up to the $5,000,000 policy limit).  Conversely, Defendants moved for partial summary judgment asking for a finding that Wisconsin law applied, capping damages at $250,000, or that if Minnesota law applied, the CIC Policy did not waive the statutory cap of $500,000.

## C. R & R's Findings and Recommendations

---

[5] Gonzalez reached this conclusion even before Wis. Stat. § 893.80(9) was enacted.  See 2011 Wis. Law, Act 162, § 1(y) (adding § 893.80(9)).

Using Minnesota's choice-of-law rules, the Magistrate Judge examined whether Minnesota's or Wisconsin's statutory limit on municipal liability applied.  (R & R at 9.)  First, the R & R determined an actual conflict existed in the difference between the statutory caps.  (See R & R at 9-10.)  The Magistrate Judge also noted "a lurking potential for another conflict" in the difference between Minnesota's and Wisconsin's approaches to waiving statutory liability caps.  (Id. at 10.)  However, the R & R concluded that because Minnesota's statutory cap was not waived by the CIC Policy, this difference would not affect the outcome of the case.  (Id. at 11.)  The Magistrate Judge further concluded that the law of either Wisconsin or Minnesota could be constitutionally applied.  (R & R at 11-12.)

Next, performing the five factor choice-of-law analysis prescribed by Milkovich v. Saari, 203 N.W.2d 408, 412 (Minn. 1973), the R & R made the following findings: (1) that the predictability of results factor weighed in favor of applying Minnesota law, (see R & R at 13-18); (2) that the maintenance of interstate order factor favored applying Minnesota law, (see id. at 19-21); (3) that the factor related to simplification of the judicial task was neutral, (see id. at 21-22); (4) that balancing the forums' interests in application of their law weighed slightly in favor of applying Minnesota law, (see id. at 22-25); and, (5) that neither law was "better," giving this factor no weight in the analysis, (see id. at 26).  The Magistrate Judge concluded that the choice-of-law analysis favored applying Minnesota's statutory liability cap.  (See id. at 26-27.)  The R & R also determined that the doctrine of comity did not require the application of Wisconsin's law.  (See id. at 27-28.)

5

Turning to the issue of waiver through procurement of an insurance policy exceeding the statutory cap, the Magistrate Judge found the CIC Policy's Non-Waiver Provision was "dispositive of the issue of liability limits" and thus WSD did not waive Minnesota's $500,000 statutory cap.  (See R & R at 34.)  The R & R looked to the language of Minn. Stat. § 466.06 and found it silent on the ability of insurers and municipalities to avoid waiver of the statutory caps by including non-waiver provisions in insurance policies.  (Id. at 29-30, 33-34.)  The Magistrate Judge also relied heavily on Reimer v. City of Crookston, No. 00-cv-370 (ADM/RLE), 2003 WL 22703218 (D. Minn. Nov. 13, 2003) as the only case in the District of Minnesota directly addressing a non-waiver provision's effect under Minn. Stat. § 466.06.  (See R & R at 30-34.)

Based on these findings, the R & R recommends denying Frazier's motion for partial summary judgment, denying Defendants' motion for summary judgment to the extent it seeks a declaration that Wisconsin law applies and limits damages to $250,000, but granting Defendants' motion to the extent it seeks a declaration that Minnesota law limits Frazier's recoverable damages to $500,000.  (R & R at 34-35.)

### D.  Plaintiff's Objections to the R & R

Frazier presents multiple objections to the R & R, but each relates to the conclusion that WSD's purchase of the CIC Policy did not waive the statutory liability cap.  (See generally Pl.'s Obj.)  Her objections are fairly categorized as follows: (1) that the R & R improperly considered Wisconsin's policy interests when deciding that WSD's purchase of the CIC Policy did not waive Minnesota's municipal liability cap (see id. at 2-3, 6-7); (2) that the Magistrate Judge erred in concluding WSD's purchase of the CIC

Policy did not waive the statutory cap according to Minn. Stat. § 466.06 (see id. at 4-5, 7-10); and, (3) that the CIC Policy's Non-Waiver Provision is ambiguous and should be construed to allow Frazier to seek damages up to the $5,000,000 policy limit, (see id. at 10-11).

### E. Defendants' Objections to the R & R

Defendants also submit multiple objections to the R & R, but each relates to the choice-of-law analysis.   (See generally Defs' Obj.)   These objections are fairly categorized as follows: (1) that the predictability of results factor favors applying Wisconsin law, (see id. at 3-6); (2) that maintenance of interstate order favors applying Wisconsin law, (see id. at 6-8); (3) that Wisconsin's policy interests favor applying its law, (see id. at 8-10); and, (4) that the Magistrate Judge erred by not applying Wisconsin's law on the basis of comity, (see id. at 10-11).

## II.    DISCUSSION

### A. Standard of Review on Summary Judgment

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).   "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Id. at 323.  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

## B.  Plaintiff's Objections

The Court agrees with Frazier's objection that the Magistrate Judge erred by finding that WSD's purchase of the CIC Policy did not waive the statutory liability cap under Minn. Stat. § 466.04.  This Court finds that the Non-Waiver Provision within the CIC Policy cannot subvert the dictates of Minn. Stat. § 466.06, which direct that the procurement of insurance beyond the statutory caps waives those limits.  In other words, parties are not free to contract away legal protections designed to benefit a third party—in this case, tort victims.  Thus, the CIC Policy limit of $5,000,000 represents the cap on Defendants' municipal liability.  However, Frazier's other objections are overruled.

### 1.  Waiver of statutory liability caps

The R & R concluded that because of the CIC Policy's "unambiguous" Non-Waiver Provision "the amount of the [CIC Policy] in excess of $500,000 [the statutory cap under Minn. Stat. § 466.04] does not cover Frazier's claim, rendering the waiver clause of Minn. Stat. § 466.06 inapplicable in this case."  (R & R at 34.)  To support this

conclusion, the Magistrate Judge described Minn. Stat. § 466.06 as "silent" on the effect of non-waiver language in an insurance policy procured by a municipality. (Id. at 30.) Similarly, the Magistrate Judge found the cases cited by Frazier distinguishable because they did not deal with a non-waiver provision. (Id.) The R & R primarily relied on Reimer, 2003 WL 22703218, which did address waiver under Minn. Stat. § 466.06 in the context of an insurance policy containing a non-waiver provision. (See R & R at 30-32, 34.) "Absent some specific legislative prohibition on the freedom of insurers and municipalities to enter contracts, there is no reason to nullify [WSD's] agreement with its insurer." (Id. at 33.)

The Court respectfully declines to adopt the Magistrate Judge's conclusion on waiver. For the reasons described below, this Court finds that when a municipality procures insurance coverage exceeding the statutory liability caps set by Minn. Stat. § 466.04, it waives those caps pursuant to Minn. Stat. § 466.06, even if the insurer attempts to avoid waiver by including a non-waiver provision in its policy.

To reach this conclusion, the Court must interpret the language of Minn. Stat. § 466.06 and its legislative history to answer two related questions. First, did WSD's procurement of the CIC Policy waive its statutory liability cap despite the Non-Waiver Provision? (See Pl.'s Obj. at 5-10 (arguing such a waiver did occur despite the Non-Waiver Provision); Defs' Resp. at 5-11 (arguing WSD did not waive because of the Non-Waiver Provision).) Second, does the Non-Waiver Provision mean $500,000 "constitutes the extent of valid and collectible insurance under § 466.06 to cover [Frazier's] claim"? (See Defs' Resp. at 3; Pl.'s Obj. at 7-8 (arguing the CIC Policy limit of $5,000,000 is

valid and collectible); R & R at 34 (finding the CIC Policy limit in excess of $500,000 not collectible by Frazier).)

### a. Statutory interpretation and legislative history

Statutory interpretation is meant to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. A law should be construed, whenever possible, "to give effect to all its provisions." Id. When the wording of a law is clear and unambiguous, it shall not be disregarded. Id. If the wording is not explicit, legislative intent may be ascertained by considering:

(1) the occasion and necessity for the law;
(2) the circumstances under which it was enacted;
(3) the mischief to be remedied;
(4) the object to be attained;
(5) the former law, if any, including other laws upon the same or similar subjects;
(6) the consequences of a particular interpretation;
(7) the contemporaneous legislative history; and
(8) legislative and administrative interpretations of the statute.

Id. A court may also assume the legislature did not intend that the law produce an absurd or unreasonable result. Minn. Stat. § 645.17. Furthermore, it can be presumed the legislature intended the statute be effective and "favor the public interest as against any private interest." Id. However, courts will not "'add words or meaning to a statute that were intentionally or inadvertently omitted.'" Seagate Tech., LLC v. W. Digital Corp., 854 N.W.2d 750, 759 (Minn. 2014) (quoting Rohmiller v. Hart, 811 N.W.2d 585, 590 (Minn. 2012)).

In its current form, Minn. Stat. § 466.06 allows municipalities to "procure insurance against liability" even if such insurance provides "protection in excess of the

limit of liability imposed by section 466.04."   However, obtaining such insurance has a consequence:

> **The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04** only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim.

Minn. Stat. § 466.06 (emphasis added).  Procurement of insurance does not waive "any governmental immunities or exclusions." Id.

This statute was previously revised on two occasions relevant to the matter at bar. The first was in 1987.  Prior to 1987, the statute read in relevant part: "The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided."  Minn. Stat. § 466.06 (1986).  The 1987 amendment made clear that procurement of insurance waived Minn. Stat. § 466.04's statutory limits on liability, not the immunity afforded to municipalities under Minn. Stat. § 466.03.  See 1987 Minn. Laws, ch. 260, § 1; Imlay v. City of Lake Crystal, 453 N.W.2d 326, 333 (Minn. 1990) ("When the legislature amended section 466.06 in 1987, it specifically distinguished between section 466.04 limits (monetary caps) that may be waived and section 466.03 immunities that may not."); Douglas J. Muirhead & Craig T. Dokken, Impacts on the Liability of Municipalities Following the Minnesota Tort Reform Act, 10 Hamline L. Rev. 427, 427-28 (1987) (municipal liability caps "are waived if, and to the extent, the municipality obtains insurance")

The second amendment to Minn. Stat. § 466.06 came in 1992.  That amendment, in relevant part, struck language in the statute linking waiver of the statutory caps "to the

extent of the liability stated in the [insurance] policy" and replaced it with the phrase

"only to the extent that valid and collectible insurance . . . exceeds those limits and covers

the claim." <u>See</u> 1992 Minn. Laws, ch. 513, § 44.  This change served a very specific

purpose:

> These amendments were enacted in response to a decision from this court, <u>Pirkov–Middaugh v. Gillette Children's Hosp.</u>, 479 N.W.2d 63, 68 (Minn. Ct. App. 1991), in which we held that a hospital had waived its liability limits to the extent of coverage "stated in the policy" it had purchased, even though that insurance was no longer available because the insurer had become insolvent.  The supreme court reversed our decision, based on the "plain meaning" of the pre–1992 statute; the court further examined the 1992 amendments and the legislature's explanation that these amendments were intended to "clarify" and not change existing law.  <u>Pirkov–Middaugh v. Gillette Children's Hosp.</u>, 495 N.W.2d 608, 610–11 (Minn. 1993) (citing 1992 Minn. Laws ch. 513, art. 4, § 62 ("The amendments in this article to Minnesota Statutes, sections 3.736 . . . and 466.06, are intended to clarify, rather than to change, the original intent of the statutes amended.")).

<u>City of Red Wing v. Ellsworth Cmty. Sch. Dist.</u>, 617 N.W.2d 602, 608-09 (Minn. Ct. App. 2000).

Minnesota Statute § 466.04's liability limits evidence the Minnesota legislature's intent to protect "the fiscal integrity and financial stability" of local governments.  <u>See Pirkov-Middaugh By & Through Middaugh v. Gillette Children's Hosp.</u>, 495 N.W.2d 608, 611 (Minn. 1993) (examining Minn. Stat. § 3.736 subd. 8, which deals with statutory immunity and liability caps for tort claims against state agencies and contains language nearly identical to § 466.06 (citing <u>Lienhard v. State</u>, 431 N.W.2d 861, 867 (Minn. 1988)).  Statutory liability caps serve this purpose by shielding "naked" municipalities from tort damages awards which otherwise might cripple the municipality's ability to serve the public, or be passed along to taxpayers.  However, if a

municipality obtains insurance that protects against tort liability, the statutory caps become unnecessary.

The Minnesota legislature explicitly allows municipalities to obtain insurance in excess of § 466.04's liability caps. Minn. Stat. § 466.06. A municipality might decide to purchase insurance rather than rely on the statutory caps for several reasons. For example, small municipalities may not be capable of paying a tort claim even if damages were capped at $500,000. Insurance offers protection and manageable premium payments spread out over time.

State and local governments also have an interest in seeing tort victims compensated for their injuries. See Swenson v. Nickaboine, 793 N.W.2d 738, 746 (Minn. 2011); Fee v. Great Bear Lodge of Wisconsin Dells, LLC, No. 03-cv-3502 (PAM/RLE), 2004 WL 898916, at *3 (D. Minn. Apr. 9, 2004); see also Everton v. Willard, 468 So. 2d 936, 953 (Fla. 1985) (Shaw, J. dissenting) (examining Florida's statutory municipal liability caps and related waivers, which are similar to Minnesota's, and concluding a government entity might elect to obtain insurance despite statutory caps in part because it feels "a moral obligation to fully compensate tort victims, thus maintaining its self and public respect by demonstrating its sense of responsibility to its citizens."). However, when a municipality is liable for the injury suffered, the interests of protecting taxpayers from a large damages award and properly compensating the victim are incongruous. Procuring insurance, rather than relying on the statutory caps, is a means to appease both interests. See Everton, 468 So. 2d at 952 (Shaw, J. dissenting) ("The central thrust of the legislative scheme [providing statutory caps on liability, but

also allowing procurement of insurance in excess of those caps] is apparent. The legislature has acted to encourage the purchase of liability insurance . . . by governmental entities and to ensure that the governmental entities and their tort victims receive the full benefit of the premiums paid and the coverage obtained on such insurance contracts.").

To afford municipalities the benefit of their bargain under a private insurance contract while also adequately compensating tort victims, the act of obtaining insurance must waive any statutory cap on the municipality's liability up to the policy limit. See Casper v. City of Stacy, 473 N.W.2d 902, 904 (Minn. Ct. App. 1991) (finding it unreasonable to think the legislature created a system allowing for the use of public funds to purchase insurance beyond § 466.04's statutory caps, only to limit recovery to the caps and not the policy amount); see also Antiporek v. Vill. of Hillside, 499 N.E.2d 1307, 1308 (Ill. 1986) ("Tort immunity is intended to protect governmental funds, assuring that they will be directed and used for governmental purposes. If, however, the municipality decides to protect individuals against its negligent conduct by acquiring commercial insurance, the immunity is waived since government funds are no longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers."). This is precisely what Minnesota's statutory scheme does. See Minn. Stat. § 466.06 ("The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 . . . ."). The act of purchasing insurance coverage in excess of the caps set by § 466.04 triggers waiver under § 466.06. Casper, 473 N.W.2d at 905 ("We conclude, therefore, that the City waived its section 466.04 liability limits by purchasing insurance in excess of those limits as authorized by section

466.06.").

### b.  The effect of non-waiver provisions on statutory caps

A non-waiver provision within a municipality's liability insurance policy purporting to "maintain" the statutory caps and avoid waiver can have no effect for three reasons.  First, although Minn. Stat. § 466.06 does not expressly address non-waiver provisions, it is not silent on the issue.  The mere act of procuring insurance in excess of the statutory caps constitutes a waiver.  Casper, 473 N.W.2d at 905 ("[Minn. Stat. § 466.06] references the purchase 'of such insurance' as constituting waiver . . . .").  The statute contains no caveat, exception, or other limitation on this term.[6]  If a non-waiver provision nullified this triggering event, Minn. Stat. § 466.06's procurement language would have little if any meaning.  See Minn. Stat. § 645.17 (directing that laws be construed to give effect to all their provisions when possible).  Nor could it fairly be said that Minn. Stat. § 466.06 provided an "effective and certain" system for waiving municipal liability caps under those circumstances.  See id.  (requiring that courts presume the legislature intends the entire statute be effective and certain).  Such an understanding would not effectuate the legislature's balance between protecting municipalities from large tort damages awards and the desire to compensate tort victims.[7]

---

[6] Notably, other jurisdictions have crafted different statutory schemes explicitly stating procurement of insurance does **not** constitute a waiver of statutory liability caps.  See, e.g., Wis. Stat. § 893.80(9).  Even before this explicit legislative statement, Wisconsin courts construed this to be the intent of the legislature.  See Gonzalez, 403 N.W.2d at 755-57.  However, Minnesota's statutes contain no similar language, the legislative history evidences no such intent, and its case law is devoid of any similar understanding.

[7] Courts elsewhere, with analogous statutory schemes, have held that private insurers may

Furthermore, the Minnesota legislature clearly understood how to express its intent to maintain and not waive statutory liability caps.  Minnesota Statute § 471.981, subd. 1, states:

> A political subdivision may by ordinance or resolution of its governing body extend the coverage of its self-insurance to afford protection in excess of any limitations on liability established by law **but unless expressly provided in the ordinance or resolution extending the coverage, the statutory limitations on liability shall not be deemed to have been waived.**

(emphasis added).  Similarly, the establishment of a self-insurance pool by multiple governmental entities "shall not increase the liability limits of any member of the pool above the limits established by law for that governmental unit."  Minn. Stat. § 471.981, subd. 3.  Thus, where insurance obtained through a self-insurance pool contains a provision purporting to maintain municipal statutory liability caps, that provision is legally effective.  See Reimer, 2003 WL 22703218, at *3-4 (examining non-waiver provisions in municipal insurance obtained through self-insurance pools); Antiporek, 499 N.E.2d at 1308 (noting that where a municipality self-insures it continues to bear the risk of liability since settlements or awards are paid directly from government coffers).

---

not invoke the immunity or liability caps of their municipal-insureds.  See Antiporek, 499 N.E.2d at 1308 (finding that Illinois municipal immunity laws were crafted to make immunity unavailable to private insurers so they could not attempt to "assert [municipal] immunities and shirk responsibilities they have assumed" by insuring government entities).  The Court finds no evidence that the Minnesota legislature intended, in § 466.06, to protect private insurers by limiting the liability they faced by insuring municipalities.  The Court will not assume such intent.  See Minn. Stat. § 645.17 (directing courts to assume that the legislature intends to favor public interests over private interests in its statutes).  Nor will the Court "add words or meaning" to this effect when construing § 466.06.  See Seagate Tech., 854 N.W.2d at 759.

The stark difference between § 466.06 and § 471.981 shows a legislative intent to distinguish between waiver of statutory liability caps when a municipality elects to procure private insurance versus self-insurance.  Refusing to consider statutory caps waived when a municipality self-insures, without an express statement from the municipality to the contrary, reflects the legislative intent to protect municipalities from large tort awards.  If a municipality elects to self-insure under § 471.981, there is still a substantial threat that a damages award above the statutory cap would compromise the fiscal stability of the municipality.[8]  In light of this threat, maintaining the statutory caps, unless the municipality expressly waives them, makes sense.  However, no such threat exists if the municipality is privately insured.  Giving effect to a simple non-waiver provision in a private insurance contract would render this statutory language meaningless and would disregard the legislature's clear intent as expressed in the unambiguous language of § 466.06.  See Minn. Stat. § 645.16 (unambiguous language in statutes is not to be disregarded).

Second, § 466.06 deals "only with a **municipality's** ability to waive its liability limits."  Ellsworth, 617 N.W.2d at 609 (emphasis added); see generally Minn. Stat. § 466.06 (discussing the procurement of private insurance by a municipality constituting

---

[8] Municipal self-insurance and self-insurance pools are made up of funds contributed by the municipality or other government entities.  See generally Minn. Stat. § 471.981.  Thus, when municipal self-insurance "pays out" on a tort claim, the fiscal health of the municipality(s) is directly implicated.  Antiporek, 499 N.E.2d at 1308 (noting that where a municipality self-insures, it continues to bear the risk of liability since settlements or awards are paid directly from government coffers).  This is not so where the municipality is covered by a private insurer.  Then, the fiscal implication for the municipality is only the premium it paid for the insurance, along with any deductible.

waiver).  An attempt by a **private insurer** to preserve its insured municipality's statutory liability caps for its own benefit is clearly not contemplated by the language of this statute.  See Ellsworth, 617 N.W.2d at 609 (holding that a school district employee's purchase of personal insurance did not waive the school district's statutory liability caps, nor could that personal insurance be used to calculate the extent of the school district's waiver, since it had in fact purchased its own private insurance); Antiporek, 499 N.E.2d at 1308 (finding Illinois' municipal immunity laws were unavailable to private insurers so they could not "assert [municipal] immunities and shirk responsibilities they have assumed").

Third, "[i]t is a salutary rule of law that when a statute is founded upon public policy, those to whom it applies should not be permitted to waive its provisions."  Heim v. Am. Alliance Ins. Co. of New York, 180 N.W. 225, 226 (Minn. 1920) (examining an insurer's attempt to contract around Minnesota's statutory requirements for the content of fire insurance policies); see also Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422, 1432 (2014) (noting that under Minnesota law, parties may not contract around or waive the covenant of good faith and fair dealing read into contracts as a matter of law); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981) (holding that rights under the Fair Labor Standards Act "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." (quotations omitted)); E.E.O.C. v. Woodmen of World Life Ins. Soc., 479 F.3d 561, 570 (8th Cir. 2007) (noting employers cannot require employees to give up substantive rights, or contract around the same).  Legislation addressing the

subject and content of insurance contracts is the public policy of the state.  Heim, 180 N.W. at 226.  Minnesota Statute § 466.06 controls the waiver of statutory municipal liability caps.  It is binding on municipal insurance contracts and the parties to them. Allowing a non-waiver provision to circumvent the effect of a municipality's purchase of private insurance would "nullify the purposes of [§ 466.06] and thwart the legislative policies it was designed to effectuate," see Barrentine, 450 U.S. at 740, all for the principal benefit of private insurers, Minn. Stat. § 645.17 (directing that courts **not** presume statutes are intended to favor private interests over public ones).

For these reasons, Defendants' argument that the Non-Waiver Provision prevented waiver under § 466.06 must fail.  To find otherwise would allow Defendants to contract around the provisions of § 466.06, see Heim, 180 N.W. at 226, and disrupt the legislative policies behind Minnesota's statutory liability limits, see Barrentine, 450 U.S. at 740. Moreover, the Non-Waiver Provision suggests CIC, as the private insurer, and not WSD, the municipality, is attempting to prevent a waiver of the statutory caps.  (See CIC Policy at 34 ("[CIC does] not waive our right to deny liability by reason of [WSD's] immunity or limitation.").)  Section 466.06 governs a municipality's ability to preserve or waive the statutory caps afforded to it by the legislature, not a private insurer's ability to do the same.  See Ellsworth, 617 N.W.2d at 609.

It is of no consequence that the CIC Policy declares nothing within it "shall be deemed a waiver of any statutory . . . limitation of liability to [WSD]."  (CIC Policy at 34.)  WSD, merely by procuring the CIC Policy, waived the statutory liability cap pursuant to the unambiguous language of § 466.06.  See Casper, 473 N.W.2d at 905.  The

Non-Waiver Provision is irrelevant to whether WSD waived under § 466.06. Furthermore, the Minnesota legislature clearly understood how to make waiver of statutory caps require more than merely procuring insurance. See Minn. Stat. § 471.981, subd. 8. Given the difference between self-insurance and private insurance for municipalities described above, this distinction makes sense. If the Non-Waiver Provision were effective, this distinction, the legislative purpose behind Minnesota's municipal liability statutory scheme, and the unambiguous language of § 466.06 would all be compromised.

### c.  Distinguishing Reimer

The R & R and Defendants rely heavily on Reimer, 2003 WL 22703218, to argue that the Non-Waiver Provision limited WSD's liability to the statutory cap of $500,000. (See R & R at 30-34; Def's Resp. at 3, 5-7, 9, 13.) It appears that Reimer is the only case in this district to examine Minn. Stat. § 466.06 in relation to a non-waiver provision within an insurance policy. However, Reimer's finding related to § 466.06 is dicta and the case is factually distinguishable.[9]

In Reimer, the plaintiff sued the defendants, the City of Crookston ("the City") and the Crookston Public School District ("the District") (collectively, "Crookston"), for injuries he sustained when a boiler at a Crookston school facility exploded. 2003 WL 22703218 at *1. According to the plaintiff, the explosion was a result of the negligence of one or more Crookston employees. See id. Both the City and the District carried

---

[9] Reimer was ultimately appealed to the Eighth Circuit, but on issues unrelated to the district court's conclusions about waiver of the statutory liability caps under § 466.06. See Reimer v. City of Crookston, 421 F.3d 673 (8th Cir. 2005).

insurance policies through self-insurance pools established pursuant to Minn. Stat. § 471.981. Id. at *2. The City's self-insurance policy carried an explicit non-waiver of the statutory liability caps set forth in Minn. Stat. § 466.04. The District's self-insurance policy stated that recovery under the policy was subject to the "liability limits imposed by statute." Id. The plaintiff argued that by obtaining the self-insurance policies, Crookston waived the statutory caps under Minn. Stat. § 466.06. Id. More specifically, the plaintiff contended that § 466.06 applied because Crookston was not self-insured under Minn. Stat. § 471.98 since there was no resolution or ordinance establishing that the City or District elected to self-insure, or bylaws governing the self-insurance pools. Id. at *3.

Looking at the City's and District's insurance policies, the Court found they were obtained through self-insurance pools formed in accordance with Minn. Stat. § 471.981. Id. "Because Defendants are participants in self-insurance pools, as authorized by Minnesota law, their respective procurement of insurance protection in excess of $300,000 does not waive the applicable statutory liability limit unless the coverage expressly provides for such waiver." Id. Far from providing the affirmative waiver of the statutory caps required by § 471.981, sub. 8, the Crookston self-insurance policies expressly preserved those liability caps and limited the coverage provided to the cap amounts. See id. at *2. The Court also noted that the City, because it chose "non-waiver coverage," received a premium discount from the self-insurance pool. Id. at *4.

Although not relevant to the issue before the Court, the Court went on to say in dicta that "[n]ot only are the [Crookston] policies devoid of any explicit waiver of the limits of Minn. Stat. § 466.04, subd. 1, but the inclusion of unambiguous non-waiver

language is dispositive of the issue of liability limits even if Defendants were not considered self-insured." Id. However, Minn. Stat. § 466.06 was not specifically cited in support of this conclusion, see id. at *4, nor did the Court offer any analysis of that statute or its applicability, see generally id.

This Court declines to adopt the Reimer Court's conclusion regarding waiver under Minn. Stat. § 466.06 for two reasons. First, this part of the opinion is obiter dictum and unpersuasive.[10] The plaintiff in Reimer directly challenged whether Crookston was self-insured under § 471.981. Id. at *3. The Court concluded Crookston was self-insured. See id. at *3-4. This was the basis for the Court's decision. Id. at *4 ("As members of self-insurance pools authorized by state statute, Defendants must affirmatively waive the monetary protections of Minnesota Statutes Section 466.04, which neither has done.") Moreover, besides a general quote of § 466.06, Reimer gives no analysis as to why a non-waiver provision should render that statute ineffective, see id. at *3-4, nor does it account for the stark difference between § 466.06 and § 471.981, subd. 8, see generally id.

---

[10] "Judicial dictum involves a court's expression of its opinion on a question directly involved and argued by counsel though not entirely necessary to the decision. Put another way, judicial dictum constitutes an expression emanating from the judicial conscience. Obiter dictum is simply Latin for something said in passing. Judicial dictum is entitled to much greater weight than mere obiter dictum and should not be lightly disregarded." Brink v. Smith Companies Const., Inc., 703 N.W.2d 871, 877-78 (Minn. Ct. App. 2005) (quotations and citations omitted); Passmore v. Astrue, 533 F.3d 658, 661 (8th Cir. 2008) (concluding a court need not follow dicta and defining obiter dictum as "a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." (quotations and citations omitted)).

Second, Reimer is factually distinguishable from this matter.  There, both the City and the District were insured through self-insurance pools, meaning Minn. Stat. § 471.981, subd. 8 governed waiver of the statutory liability caps.  See id. at *2-3.  Here, WSD obtained insurance through a private insurer — CIC — meaning Minn. Stat. § 466.06 controls waiver of the statutory liability caps.   Waiver under § 466.06 is substantively different from waiver under § 471.981.  See supra Part II.(B).(1).(b).

### d.  The effect of non-waiver provisions on the extent of valid and collectible insurance

Defendants claim that the $500,000 liability cap under § 466.04 constitutes the extent of "valid and collectible" insurance under § 466.06.  (See Defs' Resp. at 3; R & R at 34 (adopting Defendants' view).)  This argument must fail for reasons similar to those described in Part II.(B).(1).(a)-(ib).  The Ellsworth and Pirkov-Middaugh cases are also informative.

In Ellsworth, a Wisconsin school district obtained a $1,000,000 commercial general liability policy, as well as a $5,000,000 umbrella policy (totaling $6,000,000 in coverage).  617 N.W.2d at 605.  An employee of the school district ("Dulak") privately obtained a separate excess coverage liability policy.  Id.  When a student of the district was injured at a Minnesota theater rented by Dulak for use in a school play, the student brought tort claims against Dulak and the school district.  Id. at 604.  Subsequently, the student settled with the school district's insurer for $5,000,000.  Id.  The settlement released Dulak from any claim up to $6,000,000 and in excess of $7,000,000.[11]  Dulak's

---

[11] $7,000,000 represented the school district's total insurance coverage combined with

private insurer brought a motion for partial summary judgment looking to dismiss all claims against Dulak, arguing his liability was capped at $200,000[12] and that the student's settlement exceeded that amount.  Id. at 605.  The district court denied this motion, finding the school district's purchase of insurance waived the liability cap up to $6,000,000 and that Dulak's $1,000,000 private insurance policy was also collectible.  Id. Dulak and his insurer appealed.  Id.

The Minnesota Court of Appeals considered the language of § 466.06 and its legislative history to decide what constituted "valid and collectible" insurance.  See id. at 607-09.  First, the court noted that sovereign immunity has given way in some areas and been replaced by statutory caps on government liability.  Id. at 607-08.  However, Minnesota law waived these caps "'to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim.'"  Id. at 608 (quoting Minn. Stat. § 466.06). The court found the phrase "valid and collectible" ambiguous on its face because it was subject to two reasonable interpretations: one allowing Dulak's private policy to be used in calculating the extent of the school district's waiver, the other disallowing the same. Id.

Looking at the 1992 amendment to § 466.06, which added the "valid and collectible" language, the court concluded that Dulak's purchase of insurance could neither waive the school district's statutory liability cap in general, nor could it be used to calculate the extent of any waiver by the school district.  See id. at 609.  "Dulak's

---

Dulak's personal insurance.

[12] At the time, § 466.04 capped municipal liability at $200,000.

purchase of private, excess insurance . . . is not 'valid and collectible insurance' that can be considered when determining the extent of the Wisconsin school district's waiver of its liability limits." Id.

Pirkov-Middaugh influenced the Ellsworth Court's decision. See Ellsworth, 617 N.W.2d at 608. There, a patient sued several doctors at Gillette Children's Hospital ("Gillette"), a state entity, for malpractice. Pirkov-Middaugh, 495 N.W.2d at 609. At the time the patient's claims arose, Gillette carried a $1,000,000 liability insurance policy through Great Global Insurance Company ("Great Global"). Id. at 610. Had Gillette not carried this policy, its liability would have been capped at $100,000 pursuant to Minn. Stat. § 3.736.[13] Id. Great Global initially assumed Gillette's defense, but went bankrupt shortly thereafter. Id. As a result of Great Global's insolvency, and pursuant to statute, Gillette was provided with a $300,000 liability policy through the Minnesota Insurance Guaranty Association. Id. However, the district court held that because Gillette purchased the Great Global policy, it waived its statutory cap on liability up to that policy's $1,000,000 limit, despite Great Global's bankruptcy. Id. The Minnesota Court of Appeals affirmed and Gillette appealed. Id.

At the time the patient's claims were brought, procurement of insurance "'constitute[d] a waiver . . . to the extent of the liability stated in the policy but has no effect . . . beyond the coverage so provided.'" Id. (quoting Minnesota Statute § 3.736

---

[13] Minnesota Statute § 3.736 is substantively similar to Minn. Stat. Chap. 466. It contains a waiver provision at § 3.736 subd. 8 that is nearly identical to § 466.06. The similarity in the statutes is reflected in the fact they are often amended at the same time and in identical ways. See 1992 Minn. Laws ch. 513, art. 4, §§ 26, 44 (amending both statutes to add the "valid and collectible" language to the waiver clause).

subd. 8.)   The Minnesota Supreme Court found that the plain meaning of this language meant "that there is no waiver . . . **where there is no insurance coverage**."   Id. (emphasis added).   The court found it "inconceivable" that the Minnesota legislature would establish statutory caps on government liability that were waived by the purchase of excess insurance when the insurer was insolvent and the insurance unavailable to the insured state entity.   Id. at 611.   The 1992 amendment to § 3.736, subd. 8 (which amended § 466.06 in identical fashion) confirmed the court's suspicion.   Id.   "In making clear that by procuring insurance a state governmental entity waives the limits of its tort liability 'only to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim,' the legislature continues in its purpose of 'protection of the fiscal integrity and financial stability' of state government."   Id. (quoting Minn. Stat. § 3.736 subd. 8 (1992) and Lienhard, 431 N.W.2d at 867).   The defunct Great Global policy was not valid or collectible and thus did not govern the extent of Gillette's waiver.   See id.

The present matter is distinguishable from Pirkov-Middaugh and comparable to Ellsworth.   Importantly, Defendants do not dispute that the CIC Policy covers Frazier's tort claim; in fact, they appear to acknowledge that it does.   (See Defs' Resp. at 3, 8 (acknowledging that the CIC Policy provides insurance that covers Frazier's claim); see also Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment at 4 [Doc. No. 38] (stating that Frazier's claim against the Defendants is covered by the CIC Policy).)   There is "valid and collectible insurance" that "covers" Frazier's claim.   See Minn. Stat § 466.06.   Thus, this is not a situation like in Pirkov-Middaugh where the state entity's private insurer was bankrupt and **no** insurance was

available to cover the patient's claim.

Instead, Defendants dispute the **extent** to which the CIC Policy's coverage exceeds § 466.04's statutory cap on WSD's liability. (See Defs' Resp. at 3, 8) According to Defendants, the Non-Waiver Provision limits the CIC Policy's coverage amount to the $500,000 cap set by § 466.04. (Id.) Defendants are incorrect that the Non-Waiver Provision prevented a waiver of the statutory cap under § 466.06. See supra Part II.(B).(1).(a)-(b). This Court will not use an ineffective non-waiver provision to limit the extent to which WSD waived its statutory liability caps under § 466.06 by purchasing the CIC Policy. See Ellsworth, 617 N.W.2d at 609 (refusing to consider a school district employee's personal insurance when deciding the extent to which a school district waived its statutory liability cap under § 466.06); Casper, 473 N.W.2d at 904 ("We conclude the legislature did not authorize the expenditure of public funds for the purchase of liability insurance in excess of the liability limits of section 466.04 and at the same time not allow recovery beyond those limits. Such a result would be unreasonable."). The CIC Policy's $5,000,000 limit far exceeds the $500,000 statutory cap of § 466.04 and covers the injury suffered by Frazier. Thus, the CIC Policy limit represents the extent to which Frazier may seek damages against WSD on her tort claim.

## 2.  Consideration of Wisconsin's policy interests

Frazier suggests that the Magistrate Judge erred by deferring to Wisconsin's policy interests when deciding the waiver issue under Minn. Stat. § 466.06. (See Pl.'s Obj. at 3.) Citing portions of the R & R conducting the choice-of-law analysis, (see id. at 3, 6), Frazier assumes the Magistrate Judge attempted "to appease both states'

interests" when finding the cap was not waived, (see id. at 3, 6-7.)  Frazier misconstrues the R & R, which properly limited its consideration of Wisconsin's policy interests to the choice-of-law analysis.    (See  R  &  R  at  13-26.)    There  is  no  indication  these considerations influenced the Magistrate Judge's waiver analysis.  (See R & R at 28-34.) Thus, Frazier's objection in this regard is overruled.

### 3.  Ambiguity in the Non-Waiver Provision

Frazier also objects that the Non-Waiver Provision of the CIC Policy is ambiguous as  to  which  liability  limitation  it  invokes,  that  of  Minn.  Stat.  §  466.04,  or  the  CIC Policy's  limit.    (See  Pl.'s  Obj.  at  10-11.)    She  contends  that  this  ambiguity  must  be resolved in her favor, meaning the CIC Policy's $5,000,000 limit controls.  (See id. at 11.)  Notably, Frazier raises the ambiguity argument for the first time in her objections to the R & R.  (See generally Plaintiff's Memorandum in Support of Motion for Partial Summary  Judgment  [Doc.  No.  35]  (containing  no  mention  of  ambiguity);  Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment [Doc. No. 40] (same).)

Because the Court concludes that WSD waived the statutory cap on its liability despite the Non-Waiver Provision in the CIC Policy, Frazier's ambiguity argument is moot.  Even if it were not moot, the Court would decline to address the argument since it was not squarely presented to the Magistrate Judge.  Ridenour v. Boehringer Ingelheim Pharm., Inc., 679 F.3d 1062, 1067 (8th Cir. 2012) (arguments not presented to the magistrate judge are waived); Hammann v. 1-800 Ideas.com, Inc., 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006) ("A party cannot, in his objections to an R & R, raise arguments

28

that were not clearly presented to the magistrate judge.").

### e. Defendants' Objections[14]

Defendants present four objections to the R & R, all aimed at its choice-of-law analysis.  (See generally Defs' Obj.)  After conducting a *de novo* review of the record, this Court agrees with the Magistrate Judge's choice-of-law determination.  Minnesota's statutory caps on municipal liability and related waiver provisions apply to this action. Defendants' objections are overruled.

### 1.  Legal standard for choice-of-law

When a federal court sits in diversity, it uses the choice-of-law analysis prescribed by the forum in which it sits – here, Minnesota.  See Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc., 476 F.3d 594, 595 (8th Cir. 2007).  Before engaging in the full choice-of-law analysis, Minnesota directs that a court first consider whether there is an actual conflict between the states' laws.  Bolin v. Hartford Life & Acc. Ins. Co., 28 F. Supp. 3d 915, 917-18 (D. Minn. 2014).  Here, there is a conflict between Minnesota's and Wisconsin's laws which is outcome determinative and no party argues to the contrary. Furthermore, the laws of both states must be capable of constitutional application,

---

[14] The Magistrate Judge, prior to conducting the choice-of-law analysis, noted the "lurking potential" for an actual conflict in the law between Minnesota and Wisconsin when it came to waiver of municipal statutory liability caps.  (See R & R at 10-11.) However, because the R & R concluded the Non-Waiver Provision was effective under Minnesota law, there was no actual conflict.  (See id.)  Given this Court's holding that the Non-Waiver Provision did not preserve WSD's statutory liability caps under Minnesota law, see supra Part II.(B).(1), there is an actual conflict between Minnesota's and Wisconsin's statutory cap waiver laws.  Still, even considering this actual conflict over waiver, the Court agrees with the Magistrate Judge's choice-of-law analysis, as described below.

requiring significant contact(s) between them such that the choice of law is "neither arbitrary nor fundamentally unfair."  See Whitney v. Guys, Inc., 700 F.3d 1118, 1123 (8th Cir. 2012).  Either Minnesota or Wisconsin law could be applied constitutionally and no party argues to the contrary.

When conducting the actual choice-of-law analysis, Minnesota courts consider the following factors: "(a) Predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task; (d) advancement of the forum's governmental interests; and (e) application of the better rule of law."  Milkovich v. Saari, 203 N.W.2d 408, 412 (Minn. 1973).  "These factors were not intended to spawn the evolution of set mechanical rules but instead to prompt courts to carefully and critically consider each new fact situation and explain in a straight-forward manner their choice of law."  Jepson v. Gen. Cas. Co. of Wisconsin, 513 N.W.2d 467, 470 (Minn. 1994).

### 2.  Predictability of results

Defendants contend the Magistrate Judge erred in finding that the predictability of results factor favored applying Minnesota law.  (Defs' Obj. at 3-6.)  Specifically, Defendants allege that because WSD is a municipality this factor is not only important in the overall analysis, but also weighs in favor of applying Wisconsin's law.  (See id. at 5.) Defendants argue that the parties to the CIC Policy "had a 'justified expectation' that the insurance, which was purchased for a Wisconsin school district and its employees, was subject to" Wisconsin's statutory liability cap and waiver laws.  (Id. at 6.)  In support of their objection, Defendants cite Lommen v. City of East Grand Forks, 522 N.W.2d 148 (Minn. Ct. App. 1994).  (Id. at 3-5.)

In Lommen, a Minnesota police officer pursued a suspect into North Dakota causing an accident which injured a North Dakota resident ("Lommen").   522 N.W.2d at 149.   Lommen sued the officer and his employer, a Minnesota municipality.   Id.   The defendants sought dismissal of Lommen's claims based on Minnesota's municipal immunity laws, which barred the claims.   Id.   Conversely, North Dakota's immunity laws allowed Lommen's suit.   Id. at 150.   The Minnesota Court of Appeals noted that police officers understand that they "enjoy a certain amount of immunity in performing their jobs."   Id.   In deciding that Minnesota's immunity laws applied, the court cautioned that it would be a poor policy decision to inhibit an officer's willingness to pursue a suspect across state lines by subjecting him "to differing standards of immunity based on the fortuitous fact of where someone is injured."   Id.

The predictability considerations of this case are markedly different than those in Lommen.   Here, both Wisconsin and Minnesota recognize that a municipality is liable for its motor vehicle tort damages.   See Minn. Stat. § 466.04; Wis. Stat. § 345.05.   The difference between the states' laws is not that a municipality is liable under one but not the other; rather, it is the extent of the municipality's liability, based on the relevant statutory caps and waiver statutes, which differs.   Defendants could not expect total immunity from Frazier's suit, even under Wisconsin's law.

Furthermore, WSD admits the district regularly traveled to Minnesota for events. (See R & R at 17.)   The CIC Policy implicitly acknowledges that other states' laws may apply.  (CIC Policy at 34 (referencing "any" statutory limit on liability), at 40 (extending "other coverages," as required by the relevant jurisdiction, to WSD's use of a vehicle

outside Wisconsin).)  This evidence suggests Defendants and CIC should have, or even did, expect laws other than Wisconsin's laws might govern WSD's liability exposure. Preserving a misguided expectation to the contrary is not a reason to apply Wisconsin's laws.  Defendants' objections are overruled.

### 3.  Maintenance of interstate order

Defendants argue the Magistrate Judge erred in finding that maintenance of interstate order weighed in favor of applying Minnesota's laws.  (See Defs' Obj. at 6-8.) They contend "applying Minnesota law would show [manifest] disrespect for Wisconsin by depriving Wisconsin of the ability to set the maximum liability of its municipalities." (Id. at 7.)  Defendants further allege that Minnesota's own interest in having its liability caps recognized by other states favors applying Wisconsin's law here.  (Id.)

When considering maintenance of interstate order, "the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong."  Jepson, 513 N.W.2d at 471.  Where the forum state has merely an "identifiable interest" in the application of its laws, but the sister state has a "substantial concern" that its laws be applied, this factor favors the sister state.  See Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 590 N.W.2d 670, 673 (Minn. Ct. App. 1999) aff'd, 604 N.W.2d 91 (Minn. 2000).[15]  However, where both states have an equal interest, the factor favors neither party.  Nodak Mut. Ins. Co. v. Am. Family Mut. Ins.

---

[15] The Minnesota Court of Appeals in Nodak concluded that maintenance of interstate order favored applying North Dakota's law.  590 N.W.2d at 673.  However, on appeal, the Minnesota Supreme Court found this factor was neutral.  604 N.W.2d at 95.

Co., 604 N.W.2d 91, 95 (Minn. 2000) (finding North Dakota and Minnesota have an equal interest in no-fault benefits recovery related to vehicle accidents taking place within their borders, as evidenced by both having no-fault statutory schemes).

Both Minnesota and Wisconsin have an interest in protecting municipalities from liability, but also compensating tort victims.   Wisconsin's ability to protect its municipalities from substantial tort awards is not damaged by applying Minnesota's law here.   Defendants are "protected" by the CIC Policy, meaning WSD faces none of the serious fiscal consequences Wisconsin's statutory caps were meant to guard against. That WSD might face higher insurance premiums or elect to engage in less travel to Minnesota if Minnesota's statutory cap laws were to apply[16] does not constitute a "substantial concern" requiring deference to Wisconsin's laws.   This is especially true given Minnesota's considerable interest in ensuring Minnesota residents tortiously harmed in Minnesota are appropriately compensated.   See Jepson, 513 N.W.2d at 472 ("Minnesota places great value in compensating tort victims. We have even refused to apply our law when the law of another state would better serve to compensate a tort victim."); Boatwright v. Budak, 625 N.W.2d 483, 490 (Minn. Ct. App. 2001) (selecting Iowa's vicarious liability law because Minnesota's laws on vicarious liability did not apply to accidents occurring outside the state and Iowa's laws best served Minnesota's interest in seeing tort victims are compensated).

---

[16] There is no evidence in the record to suggest whether the current liability insurance premium rates for Wisconsin municipalities do, or do not, reflect this possibility already. Nor is there any evidence WSD or any other Wisconsin municipality would limit travel to Minnesota in this way.

Applying Minnesota's laws also presents no risk of exposing a Minnesota municipality to unwarranted liability under Wisconsin's laws.  Suppose a case arose in Wisconsin with facts the mirror image of those here.  A Wisconsin resident is injured, in Wisconsin, by a school bus owned and operated by a Minnesota school district.  The Minnesota school district carries an insurance policy resembling the CIC Policy.  Were the Wisconsin court to apply Wisconsin's law, the Non-Waiver Provision within the insurance contract would be effective and the statutory cap of $250,000 would limit any recovery.  See Wis. Stat. §§ 345.05, 893.80(9).  The Minnesota school district would actually be **more** protected than if Minnesota's law were applied.  Defendants' objections are overruled.

### 4.  Advancement of the forum's interest

Defendants allege the Magistrate Judge erred in finding that the advancement of the forum's interest factor favors applying Minnesota law.  (See Defs' Obj. at 8-10.) According to them, Lommen "compels" applying Wisconsin's law because Minnesota's law infringes upon the power of Wisconsin to define the tort immunity of its municipalities.  (Id. at 8-9.)

The Lommen case is markedly different from the matter at bar.  See supra Part II.(C).(1).  Most notably, it considered the ability of a state to define the tort **immunity** given to the public employee-employer relationship.  Lommen, 522 N.W.2d at 152. Here, municipal statutory liability limits and their waiver are at issue, not the immunity of municipalities, or the ability of either state to set such immunity.  In Lommen, the states' laws differed in that a North Dakota municipality could be liable for the official acts of a

police officer regardless of the officer's immunity, whereas Minnesota extended officer immunity to the municipal-employer.  Id. at 149-50.  Both Wisconsin and Minnesota allow for municipal tort liability up to certain limits and also for waiver of those limits, although on different terms.  As the Magistrate Judge noted, these distinctions represent a difference in Wisconsin's and Minnesota's balancing of the competing considerations behind the statutory caps: protecting the public purse by limiting municipal liability and compensating tort victims.  (See R & R at 23.)  However, the Court declines to find this difference in balancing "compels" applying Wisconsin's laws here.

The Ellsworth case is again informative.  There, a Minnesota resident ("Dulak"), while employed as a teacher by a Wisconsin school district, rented out a theater owned by a Minnesota municipality for the purpose of presenting a school play.  Ellsworth, 617 N.W.2d at 605.  Dulak and the Wisconsin school district carried private liability insurance policies.  Id.  A student of the Wisconsin school district, who was also a Wisconsin resident, was seriously injured during play practice at the theater.  Id.  The student sued both the Wisconsin school district and Dulak on tort claims.  Id.  The district court concluded all five choice-of-law factors weighed in favor of applying Minnesota law.  Id. at 606.

On appeal, the injured student argued that Dulak and the Wisconsin school district were not entitled to immunity or statutory limits on their liability under Minnesota law.  See id. at 606.  The Minnesota Court of Appeals rejected this idea, holding that municipal employees of another state do not become private citizens, losing their immunity, upon crossing into Minnesota.  Id. at 607.

> Rather, questions of interstate suability must be determined under the law of the forum, which require a court to examine its own state's policies and whether this state would permit itself to be sued if it had engaged in the conduct assigned to the sister state in the present action.

Id. (quotations and citations omitted).  Thus, the district court correctly found that Minnesota law applied and properly analyzed the extent of any waiver by Dulak and the Wisconsin school district according to Minn. Stat. § 466.06.  Id.; see supra Part II.(B).(1).(d) (discussing Ellsworth).

The facts here are similar to those in Ellsworth.  WSD is a Wisconsin school district which has regular contact with the state of Minnesota.  Bickford, an employee of WSD, piloted a bus, owned by WSD, into Minneapolis where an accident occurred injuring Frazier.  That Frazier is a Minnesota resident **strengthens** the conclusion that Minnesota's policy interests support application of Minnesota law.  See Ellsworth, 617 N.W.2d at 607 (finding Minnesota law applied even where the victim was a Wisconsin resident).

Furthermore, Minnesota law would subject a Minnesota municipality to identical liability on these facts.  See id. (holding that "interstate suability" be decided under "the law of the forum," considering the forum's policies and whether it would permit itself to be sued for similar conduct).  Minnesota Statute § 466.02 makes Minnesota municipalities liable for torts, but limits that liability to the statutory caps of § 466.04.  However, if the municipality obtains private insurance in excess of those caps, the municipality may be held liable up to the policy limit.  See Minn. Stat. § 466.06.  There is no danger that applying Minnesota law would subject a sister state's municipality to

disparate treatment.

Advancement of the forum's interest favors applying Minnesota law in this case. Defendants' objections are overruled.

### 5.  Comity

Defendants claim the Magistrate Judge erred by refusing to apply Wisconsin law based on the doctrine of comity.  (See Defs' Obj. at 10-11.)  Specifically, Defendants argue the Court should invoke comity to "respect" Wisconsin's limits on municipal liability.  (Id. at 10.)  Moreover, "Minnesota would want its own municipal law to apply" if one of its school districts were a defendant in Wisconsin.  (Id.)

The doctrine of comity is not a formal rule, but rather an "informal policy" of respecting other states' jurisdiction by giving effect to their laws and judicial decisions. Medtronic, Inc. v. Advanced Bionics Corp., 630 N.W.2d 438, 449 (Minn. Ct. App. 2001). Where a sister state enjoys sovereign immunity under its laws, but not the laws of the forum state, many courts use the doctrine of comity to preserve the sister state's immunity.  See Reed v. Univ. of N. Dakota, 543 N.W.2d 106, 109 (Minn. Ct. App. 1996) (collecting cases).

As described before, this is not a situation where Wisconsin affords its municipalities immunity from tort liability but Minnesota does not; both states allow for tort claims against municipalities.  Although Minnesota's statutory liability cap amount is higher than Wisconsin's, and waiver of those caps differs between the states, applying Minnesota's laws does not show "disrespect" for Wisconsin's laws.  This is especially true given that the alleged tort occurred in Minnesota and injured a Minnesota resident,

substantially increasing Minnesota's policy interests in ensuring the victim is compensated.  Cf. Reed, 543 N.W.2d at 109-10 (upholding dismissal of tort claims under the principle of comity where the defendants were North Dakota state entities, the alleged tort occurred in North Dakota, and North Dakota law would afford the North Dakota defendants immunity, but Minnesota law would not).

The Court declines to apply Wisconsin law on the basis of comity under these facts.  Defendants' objections are overruled.

## III.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections to the Report and Recommendation [Doc. No. 51] are **SUSTAINED IN PART AND OVERRULED IN PART**;

2. Defendants' Objections to the Report and Recommendation [Doc. No. 52] are **OVERRRULED**;

3. The R & R [Doc. No. 50] is **ADOPTED IN PART**;

4. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 28] is **GRANTED** such that Minnesota law applies and the $5,000,000 limit of Defendants' insurance policy represents the statutory limit for any recovery by Plaintiff; and

5. Defendants' Motion for Partial Summary Judgment [Doc. No. 33] is **DENIED**.


Dated: October 15, 2015                      s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge